LAYTON F. PUCKETT v. JAMES L. L. McCALL, ADM'R.

The first clause of the 49th section of the act of 28th March, 1848, about estates, reads as follows: "No executor or administrator shall allow any claim for money against his testator or intestate, nor shall any chief justice approve of any such allowance, unless such claim is accompanied by an affidavit in writing that the claim is just, and that all legal offsets, payments, and credits, known to the affiant, have been allowed." (Paschal's Dig., Art. 1309, Note 483.) This section applies to claims held by the administrator and allowed by the chief justice under article 1394 of Paschal's Digest.

The 133d section of said act provides for the allowance of claims in favor of administrators and the mode of adjudicating them. (Paschal's Dig., Art. 1395, Note 525.) This article dispenses with the necessity of the allowance of his own claim by the administrator, but not with the affidavit required by article 1309.

Where the probate court had allowed a claim in favor of an administrator under article 1394, and entered such allowance upon the minutes of his court, it became a *quasi* judgment, from which any creditor, whose claim had been allowed and approved, may prosecute a *certiorari* to the district court for the revision of such judgment, and where the district court affirmed such action of the probate court, this court reversed the judgment for want of such affidavit.

LINDSAY, J., dissented, and insisted that the affidavit was not necessary, and that the *certiorari* was not the proper remedy.

APPEAL from McLennan. The case was tried before Hon. THOMAS HARRISON, one of the district judges.

In this case J. L. L. McCall, administrator of the estate of R. T. Barrett, deceased, and as the attorney of "Mc-Gowan & Floyd, administrators *de bonis non* of the estate of B. J. Thompson, deceased," on the 26th day of March, 1866, presented a note for $7,000, dated July 1, 1861, signed by S. H. Johnson, John McLennan, and his (McCall's) intestate, R. T. Barrett, payable to "William R. Johnson, administrator of the estate of B. J. Thompson, deceased," to the chief justice of McLennan county, at the regular term of the probate court, for approval, without an affidavit in writing "accompanying the same" that the claim was just, and that all legal offsets, credits, and payments known to affiant have been allowed, (Paschal's Dig., Art. 1309, Note

483,) which claim was approved by the chief justice, at the July term, 1866, and ordered to be paid in due course of administration. The appellant, on the 25th of September, 1866, being a creditor of the estate of R. T. Barrett, deceased, filed his petition in the district court of McLennan county, to bring said cause up for a hearing, to set aside the approval of said claim; which hearing was held on the 28th day of November, 1866, and the approval of the chief justice confirmed. A motion for new trial was overruled, and Puckett appealed.

*Flint & Chamberlin*, for appellant.

*Norris & McCall*, for appellee.

CALDWELL, J.—This is a suit instituted in the district court of McLennan county to set aside and annul an appeal claim of $7,000, which had been established in the county court against the estate of appellee's intestate. As the legality of this method to correct the error, if indeed one exists, has been suggested, we cite Heffner v. Brander, 23 Tex., 632, and authorities there quoted, for the regularity of the proceeding.

The appellant is the owner of an approved claim against the estate of appellee's intestate, and seeks a reversal of the judgment of the county court, on the ground that it would render the estate of appellee's intestate insolvent, and he would thereby probably lose the greater part of his debt.

The judgment of the county court was affirmed. In the progress of the trial defendant excepted to the ruling of the court in permitting appellee to "read in evidence the note for $7,000 sought to be established as a claim against the estate of Barrett, without the same having been first verified by affidavit, as required by law." (Paschal's Dig., Art. 1309.)

This is the only error assigned which we deem material to notice.

The appellee is administrator of the estate and also attorney for the legal owners of the claim. He relies on article 1394 of Paschal's Digest as dispensing with this affidavit in cases of executor and administrator, their agents and attorneys.

This article provides that the provisions of the "act respecting the presentation of claims shall not be construed to apply to any claim of an executor or administrator against the estate of his testator or intestate that has not been allowed by some previous executor or administrator of the same estate;" and a special mode is indicated which they shall pursue to have their claims approved for payment.

In construing this article, we should observe and steadily keep in view that it is special in its character; that it provides for a particular class of persons, held to a rigid rule; and therefore ought to receive such an interpretation as would give complete effect to each and every requirement of the act of which it is a part.

Legislative wisdom, for greater security of estates, has prescribed, as a condition precedent, that every claim for money against an estate shall be accompanied by an affidavit of its justness, &c., before it can be presented for allowance and approval. The claim is mere waste paper without it, and the executor or administrator is under no legal obligation to notice it; but where an executor or administrator is the owner, it would be an absurdity to suppose that he could present it to himself. Hence the obvious necessity of dispensing with—what? The affidavit? We think not. The language is explicit. The "presentation of claims" only is waived. (Paschal's Dig., Art. 1394.)

The affidavit furnishes some security against unjust claims, and, if falsely taken, the perjurer may be held to answer at the bar of criminal justice. Then why should this security be relaxed in favor of executors and administrators, who have the greatest facility for committing spolia-

tions upon estates? What hardship or inconvenience is imposed upon them by making the affidavit? What right or privilege is abridged? None that we can see, and by complying with this prerequisite every essential requirement of the act has its designed effect.

We are therefore of opinion, that all claims for money against an estate, by whomsoever held, must be accompanied by an affidavit of their justness, &c., before their final approval. Not that it is to be regarded as evidence of the fact, for neither the courts nor representatives of an estate can look upon it in that light. Not even an inference favorable to the claimant can be drawn from it. And when attached to the claim, it is but a compliance with a safeguard that must in nowise be omitted. Its effect, and only effect, is to purge the conscience, and put in awe of his Maker him who makes a demand against one with whom all extrinsic evidence of payment may lie buried in the tomb.

In the case before us, we search the record in vain for any "legal evidence" whatever upon which to base the judgment of the court below.

According to our view, the note sought to be established could not have been "filed" as the basis of a claim without the affidavit; with the affidavit, the court would then hear all legal evidence offered in support of it.

It may be here remarked, that appellee is not the owner of the claim, but holds it as attorney for collection against the estate of his intestate. Cases of this character call for the closest scrutiny and most exact compliance with the letter of the law. The facility with which spurious and unfounded claims are trumped up, and by *ex parte* proceedings noislessly hurried through to an approval, is but too fatally attended by insolvent estates and impoverished families.

We deem it unnecessary to remark on the paper read to the jury; it evidently had no effect on the trial.

From the foregoing, the cause must be reversed and remanded; and the court below advised that the parties have such relief as they are entitled to, not inconsistent herewith.

REVERSED AND REMANDED.

LINDSAY, J., dissenting.—In this case I am constrained to dissent from the opinion of my brother, Justice CALDWELL, who has rendered the judgment of the court.

In my view of the law, there are two errors in the opinion pronounced: First, there is no authority for the mode of proceeding by the appellant by petition to the district court and prayer for the writ of *certiorari* in a case like the present. I know of no statute which warrants it. Where the claims of creditors are presented to the administrator or executor, allowed by him, and approved by the chief justice, such allowance and approval cannot be appealed from or revised upon *certiorari* by the district court. If the allowance and approval of the claim of such creditor be erroneous, it must be set aside and nullified by an original proceeding, commenced in the district court for that purpose, showing that the claim could not legally have been allowed. But this requirement is applicable alone to claims presented to the administrator or executor, allowed by him, and approved by the chief justice. There is no statute authorizing a contestant of the claim of an administrator or executor to institute an original proceeding in the district court to set aside or nullify it by bringing up before the district court by *certiorari*, as was done in this case. (See 5 Tex., 487; 11 Tex., 116; 16 Tex., 136.) In the language of those decisions, it is a *quasi* judgment, from which an appeal must be taken to the district court, which proceeding is provided for in articles 1384 and 1383 Paschal's Digest, p. 389. Article 1382 of the same Digest provides for a revision of the settlement of the administrator or executor of his account with the chief justice as admin-

istrator or executor, and has no application to the personal claim of such *fiduciary* against the estate. In this latter case, when fraud or error is charged in such settlement, any one interested may have a revision, by an original proceeding in the district court, by virtue of its ample powers and control over the inferior courts, and may order up the record by *certiorari*. But there is no authority in the statutes for such proceeding on the adjudication of a personal claim of the administrator or executor by the chief justice, which, it is admitted, is also a *quasi* judgment, and is such a decision, order, decree, or judgment, as can only be appealed from, so far as any provision is made by statute. No fraud or collusion between the administrator and the chief justice is charged in the petition in the adjudication of this claim in favor of the administrator. If there be error in it, it is but an error of the judgment of the chief justice, which can only invoke the appellate power of the district court for its revision, and which is only provided for in the statutes by appeal. The power of carrying up cases from the county or probate courts by *certiorari* will be found, upon a careful examination of all the statutes, to be only employed in the exercise of its constitutional jurisdiction superintendence, and control over courts of inferior jurisdiction. It is here the district court derives its authority to issue writs of *certiorari* to the inferior tribunal, the probate court; and the statutes which declare the right of that court to issue such writs do not change the matter, so far as the probate court is concerned. There is express authority of statute for the issuance of such writs to the justices' courts. But this cannot be said to be the exercise of appellate jurisdiction; because all such cases are not revised, but tried *de novo*. Hence, I contend the error has been committed by the appellant in not seeking the redress of his grievance, if grievance it was, in the mode pointed out by the laws of the land.

Second, the assumption that the administrator is bound

to make the affidavit to his personal claim against the estate, as is prescribed in the statute, ((Paschal's Dig., Art. 1309, p. 312,) to other creditors, I am bound to consider as an error in the opinion delivered. The method of verifying and authenticating claims against decedents' estates in Texas is entirely a creature of statutory law. Rights exist against dead men's estates independent of any statute law whatever. And, if no statute provides a method for their enforcement, in countries where the common law is recognized those rights would be enforced according to the rules of the common law. And perhaps I need not say here that, in the absence of any statute establishing and fixing a mode, the common law is a rule of decision here. (Paschal's Dig., Art. 978, p. 254.) What was the method of establishing claims against estates of decedents by the unwritten law? It was by suit against the personal representative, and the production of proof to show the justice of the demand, which might be rebutted or avoided by appropriate defenses, or if a claim of the administrator, he retained in his hands for satisfaction of his demand. The statute of Texas (Paschal's Dig., Art. 1309, p. 312) prescribes a general method of verifying and authenticating such claims by creditors, and thus supersedes the common law method. Its language is general. If this was all of the statutes upon the subject, no doubt, from its generality, administrators and executors would be included in its requirements. But Article 1394, Paschal's Digest, p. 341, excludes the idea, by a positive declaration, that the provisions of the act respecting the presentation of claims shall be construed to apply to the claim of an executor or administrator. Yet the opinion does so construe the act, and thus renders this subsequent article of none effect, or at least of but partial effect, when the article itself says that the presentation act shall not apply at all. This article 1394 prescribes the mode, and that is the only statutory mode in which an administrator or executor can establish his claim: by filing it in the

court from which his letters emanated, on or before the sixth term after the grant of his letters, and the chief justice, at that or at some subsequent term, may hear all legal evidence in support of it; and, if satisfied of its justice, he must enter on the minutes of the court his approval, and that it is to be paid in due course of administration, unless, within three months after such approval, some person interested in the estate shall take an appeal from such approval to the district court. Here again, in confirmation of the view above presented, the law provides, that the error of the chief justice, if error there be in such decision and allowance, is to be corrected by an appeal to the district court. I deem it important that all these distinctions in the law should be observed and acted upon, to obviate the interminable confusion into which judicial administration is but too prone to tend under all circumstances. I cannot therefore concur in the opinion given by the court, for these two reasons, which, in justice to myself, I deemed it necessary to present, perhaps too concisely to impart a clear apprehension of my view of the question.